UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES P. MHINA, A14-998-003,

                Petitioner,

        -v-                                14-CV-316-JTC

ERIC HOLDER, U.S. Attorney General,

MICHAEL PHILLIPS, Facility Office Director
of Buffalo Federal Detention Facility,

TODD TRYON, Assistant Facility Office Director
of Buffalo Federal Detention Facility,

S. HUNTER, Assigned Deportation Officer
at Buffalo Federal Detention Facility,

                Respondents.

_____

## INTRODUCTION

      Petitioner James P. Mhina, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

the execution of a final immigration order of removal issued against him.  Item 1.  As

directed by this court's order entered May 16, 2014 (Item 5), respondent[1] has submitted

an answer and return (Item 9), along with an accompanying memorandum of law (Item 10),

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

in opposition to the petition, and petitioner has submitted several documents in reply, including a motion for summary judgment (Item 11), and rebuttal (Items 12, 13 and 14).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DHS records submitted to the court reflect that petitioner, a native and citizen of Tanzania, entered the United States at Philadelphia, Pennsylvania, on or about September 23, 1966, as a nonimmigrant student with authorization to remain in the United States until September 22, 1967.  *See* Item 9-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 9-1), pp. 1, 9, 12.  He was ordered to depart the United States on or before December 22, 1967, after he failed out of college.  *Id.* at 12.  His request for an extension of time to depart the United States, or to restore his status as a student, was denied by the U.S. Immigration and Naturalization Service ("INS") on February 26, 1968, and he was ordered to depart the United States on or about March 23, 1968.  *Id.*  He filed an Application to Adjust Status (I-485) which was denied by the INS on November 20, 1970, and petitioner was again ordered to depart the United States, this time by December 20, 1970.  *Id.*  Then, in March 1973, petitioner's immigration status was adjusted to that of lawful permanent resident, based upon his marriage to a United States citizen.  *Id*.

DHS records further reflect that petitioner has been convicted of several criminal offenses while present in the United States, including the following :

    a.    On or about June 2, 1975, petitioner was convicted in New York State Supreme Court, Westchester County, of robbery in the 1st degree, robbery in the 3rd degree, grand larceny in the 2nd degree, and grand larceny in the 3rd degree.  For these offenses, he was sentenced to a 3 to 9 year term of

imprisonment.  The conviction was affirmed by New York State Supreme Court, Appellate Division.

b.      On or about November 4, 1981, petitioner was convicted in New York State Supreme Court, Onondaga County, of grand larceny in the 2nd degree.  For this offense, he was sentenced to a 2 to 4 year term of imprisonment.

c.      On or about November 10, 1986, petitioner was convicted of assault in the 3rd degree (with intent to cause physical injury).  For this offense, he was sentenced to 15 days imprisonment.

d.      On or about March 22, 1997, petitioner was convicted of issuing a bad check.

e.      On or about January 4, 2002, petitioner was convicted of grand larceny in the 4th degree (value greater than $1,000).

f.      On or about May 2, 2007, petitioner was convicted of passing a check with insufficient funds/refusal to pay.

*Id.* at 9, 11-13.

On December 4, 1984, petitioner was served with an Order to Show Cause and Warrant of Arrest charging him with being removable from the United States pursuant to Immigration and Nationality Act ("INA") § 241(a)(4), as an alien who has been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, specifically referencing his July 1975 robbery and grand larceny convictions, and his November 1981 grand larceny conviction.  *Id.* at 8-9.  Petitioner was placed in INS custody, and on December 21, 1984, he was released on bond.  *Id.* at 12, 13.

On July 1, 1985, an immigration judge ("IJ") denied petitioner's applications for relief from removal and ordered him removed from the United States to Tanzania.  *Id.* at 5, 13. Petitioner's appeal from the IJ's order was dismissed by the Board of Immigration Appeals ("BIA") in a decision dated August 7, 1987.  *Id.* at pp. 5-7.  DHS records reflect that

petitioner's request for review of the BIA's decision was dismissed by the Second Circuit Court of Appeals on November 23, 1987, and a further request for review was denied on April 17, 2002.  *Id.* at 13, 15.

On or about September 30, 2009, DHS received information that petitioner had been arrested in Onondaga County, New York, on charges related to an alleged check forgery scheme. *See id.* at 10-14.  Upon verification of petitioner's immigration status, an immigration detainer was lodged against him at the Onondaga County Jail where he was being held pending trial.  *Id.*  The jury trial took place in October 2009, resulting in petitioner's conviction on charges of criminal possession of a forged instrument, falsifying business records, and scheme to defraud; but four years later, on October 4, 2013, the New York State Appellate Division, Fourth Department, reversed the judgment of conviction and ordered a new trial on those charges, finding that the trial court erred in allowing evidence of prior bad acts (*i.e.*, his conviction for writing checks with insufficient funds) not directly relevant to showing absence of mistake in possessing forged checks. *See People v. Mhina*, 972 N.Y.S.2d 767, 768-69 (App. Div., 4th Dep't, 2013).

Petitioner was taken into DHS custody on April 9, 2014, upon his release from the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS") following the state trial judge's dismissal of the underlying charges related to the alleged forged check scheme.  *See id.* at 15; *see also* Item 7 (6/12/2014 Letter from James E. Makowiec, Deputy Chief Clerk, Onondaga County Court Clerks Office).  DHS sent a presentation packet to the Embassy of the United Republic of Tanzania in Washington, D.C., requesting that a travel document be issued for petitioner's removal.

Item 9-2, p. 15.  Petitioner is currently being detained at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal from the United States.  *Id.* at 1.

On May 9, 2014, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 2-4.  The warning form advised petitioner, among other things, of the penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that pursuant to INA § 241(a)(1)(C), failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention.  *Id.*  According to DHS records, petitioner was interviewed on June 2, 2014, by a representative of the Embassy of the United Republic of Tanzania, and email correspondence with the Embassy indicates that petitioner's case file is currently under review.  Item 9-1, ¶¶ 17-19.

Meanwhile, on April 25, 2014, petitioner filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that the immigration detainer lodged against him in September 2009, and his transfer from state custody to DHS custody in April 2014 upon dismissal of the underlying charges by the trial judge (which occurred on the eve of his retrial on those charges, as ordered by the Appellate Division in its October 4, 2013 decision) deprived him of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.  *See* Item 1.  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## **DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien.  Under no circumstance during the removal period shall the Attorney General release an alien who has been found … deportable under section 1227(a)(2) [criminal offenses].").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens (like petitioner here) ordered removed due to conviction of certain enumerated crimes, or determined to be a risk to the community or unlikely to comply with the order of removal–beyond the expiration of the ninety-day removal period.  INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."  8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the

country or countries in question.  Where the Service is continuing its efforts
to remove the alien, there is no presumptive period of time within which the
alien's removal must be accomplished, but the prospects for the timeliness
of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

Petitioner's principal argument for habeas corpus relief in this case is that he has been denied due process by virtue of his transfer from state custody to DHS custody following the state trial judge's dismissal of the underlying charges related to the alleged forged check scheme, which occurred on the eve of the new trial ordered by the Fourth Department upon reversal of the convictions underlying his state sentence.  This argument is rejected outright, since the detention challenged by the present habeas petition is based on the IJ's July 1985 final order finding petitioner deportable by virtue of his criminal convictions in 1975 for robbery and grand larceny, and in 1981 for grand larceny.  As such, the state court's dismissal of the check forgery charges has no effect on the validity of the

final order of removal, or on the constitutionality of petitioner's detention in DHS custody pending the execution of that order, as authorized by INA § 241(a).

To the extent the petition can be construed as challenge to the constitutionality of the detention under the requirements of *Zadvydas*, it must likewise fail.  Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable."  *Zadvydas*, 533 U.S. at 701.  Commencing on April 9, 2014, the presumptively reasonable six-month period in which to accomplish removal in this case will not expire until October 9, 2014, and no facts are alleged in the habeas petition to provide a basis for finding that there is no significant likelihood that petitioner's removal to Tanzania can be accomplished in the reasonably foreseeable future.  As discussed above, the request for a travel document for petitioner remains pending with the Tanzanian Embassy, and there is nothing in the record before the court to indicate that Tanzanian authorities are inclined to deny the request.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated a number of aliens to Tanzania, suggesting no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2009, a total of 42 aliens were repatriated to Tanzania; in FY 2010, 31 aliens were repatriated to Tanzania; and in FY 2011, 26 aliens were repatriated to Tanzania.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41 http://www.dhs.gov/yearbook-immigration-statistics-2011-3.  These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Tanzanian government can be accomplished within the reasonably foreseeable future, after which time the necessary travel arrangements may

be made for petitioner's release from custody and his repatriation to Tanzania. Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.

Accordingly, upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: August 13, 2014
p:\pending\2014\14-316.2241.aug12.2014